1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 RELIASTAR LIFE INSURANCE COMPANY, | Case No.  CV 22-2476-KK-RAO |
| 12                         Plaintiff, | |
| 13              v. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| 14 JANICE E.  HILL, ET AL., | |
| 15                         Defendant(s). | |
| 16 | |

17

      On April 12, 2022, Plaintiff Reliastar Life Insurance Company ("Plaintiff") filed a Complaint seeking declaratory relief regarding the rights of interpleader defendants Michael Stills and Janice and Kenneth Hill (collectively, "Defendants") to benefits from decedent Amy Still's ("Decedent") life insurance policy.  ECF Docket No. ("Dkt.") 1.  On January 8, 2024, the matter was tried before the Court without a jury. Dkt. 93.

      Having considered all the evidence admitted at trial – including the Pretrial Stipulations of Fact submitted by the Defendants, dkt. 91 – and the briefings submitted by Defendants, dkts. 96 and 97, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

## I.    FINDINGS OF FACT

### A.    Procedural History and Background

1.     On April 12, 2022, Plaintiff filed a Complaint seeking declaratory relief regarding the rights of Defendants who are claiming entitlement to the benefits of Decedent's life insurance policy (the "Policy").  Dkt 1 at 6.  The Policy provides that Plaintiff will pay the benefits to the beneficiary named by the insured upon the insured's death.  Id. ¶ 9.

2.     On October 14, 2022, Plaintiff filed a Motion to Deposit Funds in the amount of $450,000, comprising Death Benefits due under the Policy.  Dkt. 32.  On December 9, 2022, the Court granted Plaintiff's Motion to Deposit Funds.  Dkt. 34.

3.     On January 10, 2023, Plaintiff paid to the Clerk of the Court all the available life insurance benefits, totaling $454,095.32.  Dkts. 38, 39.

4.     On May 25, 2023, Plaintiff was dismissed with prejudice.  Dkt. 50.  The Court ordered Plaintiff receive $13,161.50 of the benefits in compensation for its fees and costs and issued a permanent injunction prohibiting any further actions against Plaintiff.  Dkt. 55.

5.     On January 7, 2024, the parties filed joint Pretrial Stipulations of Fact.  Dkt. 91.

6.     On January 8, 2024, the parties appeared before this Court and presented witness testimony.  Dkt. 93.

7.     After the close of evidence, the Court ordered defendants Janice and Kenneth Hill ("defendants Hill") to file Proposed Facts and Conclusions of Law by January 11, 2024.  Dkt. 93.  The Court ordered defendant Michael Stills ("defendant Stills") to file Objections by January 16, 2024.  Id.

8.     On January 12, 2024, defendants Hill filed Proposed Findings of Fact and Conclusions of Law.  Dkt. 96.  On January 16, 2024, defendant Stills filed

Proposed Conclusions of Law.  Dkt. 97.  Defendant Stills did not object to any of defendants Hill's proposed findings of fact.[1]  See id.  Rather, defendant Stills argues he is entitled to half of the Policy's benefits under California community property laws.  Id.  Defendants Hill argue the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.  Section 1001, preempts California community property law, and thus, they are entitled to the full benefits.  Dkt. 96.

**B.    Jointly Stipulated Facts and Evidence**

9.     Decedent was married to defendant Stills for twenty-two years. Decedent's parents are defendants Janice ("defendant Janice") and Kenneth Hill.

10.     In 2013, Decedent was diagnosed with a rare and virulent cancer.  Dkt. 91.  Over time, the cancer progressed and metastasized to Decedent's brain, causing her excruciating and unbearable pain.  Id.

11.     Decedent had Basic Life Insurance coverage totaling $450,000.  Dkt. 91. The plan was administered by Plaintiff.  Id.  The Policy was issued pursuant to ERISA.  Id.  Prior to January 2021, defendant Stills was the designated beneficiary. Id.

12.     In approximately October 2020, defendant Janice moved to Los Angeles from Tulare, California, to be closer to Decedent, her daughter.  Dkt. 96 at 4.  During that month, Decedent was admitted into the hospital due to increased levels of pain. Defendant Janice was unable to visit Decedent while she was in the hospital because COVID hospital protocols permitted only one visitor.

13.     As a result of the visitation issues, on October 19, 2020, Decedent filled out and signed her Advance Healthcare Directive ("Health Directive") and had it notarized that same day.  Ex. 10.  The Health Directive named defendant Janice as her

---

[1] The Court, therefore, finds the proposed facts, dkt. 96, admitted.

healthcare agent and permitted defendant Janice to visit Decedent in the hospital.  Id.

14.     On November 2, 2020, Decedent asked her friend, attorney Devre Ross ("Ross"), to assist with filing a restraining order against defendant Stills.  Dkt. 96 at 4.

15.     On November 5, 2020, Decedent signed a Physician Order for Life-Sustaining Treatment directing defendant Janice make medical decisions for her if she was not able to do so.  Ex. 10; Dkt. 96 at 4.  At this point, defendant Stills would no longer have any say in Decedent's medical treatment or ability to visit Decedent in the hospital.

16.     On November 6, 2020, Decedent filed a Request for Domestic Violence Restraining Order against defendant Stills.  Dkt. 91.  Defendant Stills moved out of the apartment he shared with Decedent after being served with the restraining order.  Dkt. 96 at 4.  From this date until Decedent's death, defendant Stills never saw Decedent again.  Id.  Decedent and defendant Stills stipulated to a mutual stay away order, hence, no formal hearing was held on the restraining order.  Id.  Decedent asked defendant Janice to move into the apartment.  From that time to the time of Decedent's death, defendant Janice was companion and caregiver to Decedent.

17.     Before the end of 2020, Decedent contacted Ross about her will.

18.     On January 2, 2021, Ross and defendant Janice were with Decedent at Decedent's apartment.  With Ross and defendant Janice present, Decedent executed her will appointing an executor and her parents as beneficiaries, Ex. 11; signed the Power of Attorney appointing defendant Janice as her attorney-in-fact, Ex. 3; signed a change of beneficiary form for her AAA Life Insurance policy, Ex. 4; and signed a change of beneficiary form for her two ReliaStar Life Insurance policies making defendants Hill beneficiaries in place of defendant Stills, Ex. 5.

19.     Decedent arranged to have a notary present to notarize the will and power of attorney.  While waiting for the Notary to arrive, Decedent signed the

documents that did not require notarization – specifically, the change of beneficiary forms.  The will and Power of Attorney form, appointing defendant Janice to act as attorney-in-fact, were subsequently signed and notarized.

20.     On February 2, 2021, Decedent filed for divorce from defendant Stills. Dkt. 91; Ex. 13.

21.     On March 6, 2021, Decedent passed away.  Dkt. 96.

**C.     Witnesses Testimony**

22.     Defendants Hill presented four witnesses: (1) Sharon Osterholt, (2) Mariah Mahortz, (3) Devre Ross, and (4) Janice Elaine Hill.  Defendant Stills testified on his own behalf and did not present any other witnesses.

**1.     Sharon Osterholt**

23.     Sharon Osterholt ("Osterholt") was Decedent's friend and former employment supervisor.  Osterholt testified that she visited Decedent for two days on or about February 2, 2021.  During that time, Osterholt observed Decedent did not have any problems understanding or communicating.  She additionally testified she observed Decedent and defendant Janice interact and did not see anything she felt was inappropriate between the two.

24.     The Court finds Osterholt was an honest, candid, and believable witness and that her testimony was consistent with the evidence presented.

**2.     Mariah Marhotz**

25.     Mariah Marhotz ("Marhotz"), a Registered Nurse, worked with Decedent as her clinic nurse in the oncology clinic at Cedars Sinai Hospital since 2019.  Marhotz testified that, as Decedent's clinic nurse, she was responsible both for providing treatment and emotional support during the management of Decedent's cancer.  Marhotz testified she would see Decedent on a weekly or monthly basis, depending on her treatment schedule.  She described Decedent as being alert,

oriented, and the sole decision-maker and advocate for her treatment.  On January 8, 2021, the clinic team celebrated Decedent's birthday.  Marhotz testified that on that day, Decedent was fully cognitively aware and oriented.  Marhotz testified that the last time she saw Decedent was in mid-February 2021 to discuss stopping her treatment.  On that last visit in February, Marhotz testified that Decedent, for the first time, did not appear to be functioning at her typical cognitive level.  However, she was able to have conversations with the clinic team and understand that her treatment was going to be stopped.

26.     The Court finds Marhotz was a credible, honest, and forthright witness and that her testimony was consistent with the evidence presented.

### 3.     Devre Ross

27.     Devre Ross is an attorney and long-time friend of Decedent's.  Ross testified that Decedent told her about issues she had with her husband, defendant Stills, including a few times where she had to call the police based on his concerning behavior.  Ross testified that in 2018, Decedent asked for a referral for a divorce attorney for herself, which Ross provided.  In November 2020, Decedent called Ross saying Decedent needed to leave the house and get a restraining order against defendant Stills.  Ross assisted Decedent in getting a restraining order.  Ross testified Decedent also reached out to discuss her will.

28.     On January 2, 2021, Ross testified she met with Decedent to assist in finalizing her will and executing the change in beneficiary forms and Power of Attorney form.  Ross testified Decedent had arranged to have a notary present for execution of the will and Power of Attorney form.  Ross testified that while waiting for the notary to arrive, Decedent filled out and signed the change in beneficiary forms.  Ross testified that Decedent appeared mentally competent and did not appear to be acting under duress when signing these documents.

29.     The Court finds Ross was a credible, forthright, and candid witness and that her testimony was consistent with the evidence presented.

### 4.     Defendant Janice Hill

30.     Defendant Janice, Decedent's mother, testified regarding her relationship with Decedent.  In approximately October 2020, defendant Janice moved to Los Angeles from Tulare, California, to be closer to Decedent and eventually to be her fulltime caregiver.  Defendant Janice moved into Decedent's apartment after defendant Stills was served with the restraining order.

31.     Defendant Janice testified Decedent made her own decisions right up to the end of her life.  Defendant Janice testified that, although she signed the Power of Attorney form, she never signed any documents as Decedent's attorney.  Defendant Janice testified that on January 2, 2021, the date Decedent executed her will, change of beneficiary forms, and Power of Attorney, Decedent appeared competent and of sound mind.  Defendant Janice testified she did not provide any input to Decedent regarding the will, Power of Attorney, or change in beneficiary forms.  Defendant Janice further testified she did not coerce Decedent, nor did she do anything to influence her actions.  Finally, Defendant Janice testified she did not notice any changes to Decedent's mental capacity until a little over one week before Decedent died.

32.     The Court finds defendant Janice was a credible witness.  Although defendant Janice has a financial interest in the outcome of the action, her testimony was candid, forthright, and supported and consistent with the evidence and testimony presented.

### 5.     Defendant Stills

33.     Defendant Stills testified his marriage with Decedent was a happy marriage.  Defendant Stills testified that Decedent only changed the beneficiaries of

7

the life insurance policies due to either coercion from or the undue influence of defendant Janice.  However, defendant Stills did not present any witness to support the allegations of undue influence or coercion.  Defendant Stills testified Decedent could not make these decisions on her own because of the effects Decedent's medications had upon her mental capacity.  However, defendant Stills did not present any evidence from medical providers to support this assertion.

34.     Defendant Stills testified that in October 2020, Decedent seemed less like herself.  Defendant Stills testified that the last time he spoke to Decedent about her change of beneficiary form was on or about October 31, 2020, and the last time he saw Decedent was on November 2, 2020.

35.     The Court notes defendant Stills has a financial interest in the outcome of this case.  The Court additionally notes defendant Stills had no contact with Decedent from the end of October 2020 until Decedent passed away in March 2021. Defendant Stills, therefore, had no opportunity to observe Decedent's physical, mental, or cognitive condition during these last five months.  Thus, the Court finds, to the extent defendant Stills testified to relevant issues, his testimony is given limited weight because of his financial interest and lack of contact with Decedent beginning in November 2020.

**D.     Factual Findings**

36.     The evidence establishes, based on testimony from Ross, that the change in beneficiary forms were signed before the will and durable power of attorney were executed and notarized.  Thus, the change in beneficiary form from defendant Stills to defendants Hill are valid and enforceable.

37.     Based on the testimony presented, there is no evidence of mental incompetency, duress, or undue influence upon Decedent as it relates to changing the beneficiaries to the Policy.  To the contrary, the evidence presented by defendants

Hill, through witness testimony, shows that Decedent was making her own decisions and mentally competent until approximately one week before she passed in March.

38.     The evidence further establishes that Decedent was not subject to any unlawful duress or coercion.  The evidence shows that Decedent had been considering changes to defendant Stills's access and involvement beginning as early as October 2020 when she executed her Advance Healthcare Directive.  Further, witness testimony from Osterholt, Marhotz, Ross, and defendant Janice all reflect consistent observations of Decedent with full mental capacity in January 2021 to make decisions related to her will, Power of Attorney, and change in beneficiaries.  There was no evidence presented to suggest defendant Janice acted inappropriately or that Decedent was subjected to coercion or undue influence of any kind.

## II.     CONCLUSIONS OF LAW

### A.     <u>Jurisdiction</u>

1.     This is an interpleader action brought pursuant to 28 U.S.C. § 1332 ("Section 1332") and 28 USC § 1331 ("Section 1331").  The Court has jurisdiction under Section 1332 because there is diversity of citizenship between Plaintiff, a corporation incorporated under the laws of the State of Minnesota, and Defendants, citizens of the States of California and Texas, and the amount in controversy exceeds $75,000.  The Court additionally has jurisdiction under Section 1331 because the Policy is part of an employee welfare benefits plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001.

2.     Venue is proper in the Central District of California, pursuant to 28 U.S.C. §§ 1397 and 1391, because Decedent resided and was employed in the judicial district, a substantial part of the events giving rise to the action occurred in the judicial district, and defendant Stills resides in the judicial district.

**B.      ERISA Preempts State Community Property Laws**

3.      The parties stipulated the Policy is issued and controlled by ERISA. Dkt. 91.  ERISA "commands that a plan shall 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D), making payments to a 'beneficiary' who is 'designated by a participant, or by the terms of [the] plan.'"  29 U.S.C. § 1002(8); Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147-48 (2001).  Thus, the ERISA statute "governs the payment of benefits, a central matter of plan administration."  Id.

4.      Under 29 U.S.C. § 1144(a), ERISA shall supersede "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  Carmona v. Carmona, 603 F.3d 1041, 1061 (9th Cir. 2010).  The Supreme Court has repeatedly observed "that this broadly worded provision is 'clearly expansive.'"  Egelhoff, 532 U.S. at 146 (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)).  A state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan."  Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983).  "[T]o determine whether a state law has the forbidden connection, [courts] look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans[.]"  California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc., 519 U.S. 316, 325 (quoting Travelers, 514 U.S. at 656 (citation omitted)).

5.      "The basic thrust of the pre-emption clause . . . [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."  Travelers, 514 U.S. at 657; Egelhoff, 532 U.S. at 148 ("One

of the principal goals of ERISA is to enable employers to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.").

6.      The Supreme Court has "not hesitated to find state family law pre-empted when it conflicts with ERISA or relates to ERISA plans." Egelhoff, 532 U.S. at 151-52; see, e.g., Boggs v. Boggs, 520 U.S. 833 (1997) (holding that ERISA pre-empts a state community property law permitting the testamentary transfer of an interest in a spouse's pension plan benefits).  Thus, ERISA preempts "state laws that mandate[ ] employee benefit structures or their administration," or that "provid[e] alternative enforcement mechanisms." Travelers, 514 U.S. at 658.

7.      Here, ERISA preempts any state law that "governs the payment of benefits" of an ERISA-controlled plan. Egelhoff, 532 U.S. at 147-48.  As an initial matter, the parties agree the Policy is issued and controlled by ERISA, and the Court finds the change in beneficiary form is valid because the form was properly executed and there is no evidence of duress or undue influence.

8.      Despite the valid designation of beneficiary form, defendant Stills argues he is entitled to half of the Policy benefits because California's community property laws designate these benefits as "benefits from a spouse's earnings and employment." Dkt. 88 at 4.  However, the Supreme Court is clear that payment of benefits is "a central matter of plan administration," and thus, any state law that conflicts or relates to the administration of benefits is preempted.  Egelhoff, 532 U.S. at 147-48, 151-52.

9.      To the extent defendant Stills argues preemption does not apply because this is the second stage of an interpleader action whereby the insurance company has been dismissed, the procedural posture does not change the outcome of this case. The question is whether the state law "directly conflicts with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan

documents[.]"  Egelhoff, 532 U.S. at 150.  Providing 50% of the benefits to defendant Stills under California's community property laws conflicts with the designated beneficiary detailed in the ERISA-governed Policy in this case.

10.    Hence, because Decedent properly changed her beneficiary designation from defendant Stills to defendants Hill, defendants Hill are the recognized beneficiaries of the Policy and are entitled to the full amount of the life insurance proceeds.  For the reasons set forth above, the Court orders that Judgment be entered in favor of defendants-in-interpleader Janice and Kenneth Hill.

Dated:  February 2, 2024

_____
HONORABLE KENLY KIYA KATO
United States District Judge